## Lerner *v.* Felderman, Appellant.

*Municipal Court of Philadelphia County—Jurisdiction—Amount —Capias instead of summons—Malicious prosecution—Act of July 12, 1913, P. L. 711.*

An action to recover damages for malicious prosecution is an action for damages for personal injuries within the meaning of Section 10 of the Act of July 12, 1913, P. L. 711, which provides

that the Municipal Court of Philadelphia County shall have juris-
diction in civil actions where the value of the matter in controversy
does not exceed six hundred dollars, "except that in actions for dam-
ages for personal injuries it shall have jurisdiction where the sum
demanded by the plaintiff does not exceed fifteen hundred dollars."

In such a case the municipal court has jurisdiction of the per-
son, although a capias instead of a summons may have been issued
after the statement was filed, if it appears that the defendant after
making an ineffectual attempt to quash the writ, filed an answer
and plea, let the case go to trial on the merits, and after a verdict
against him filed and argued a motion for a new trial.

*Malicious prosecution — Advice of counsel — Erroneous instruc-
tion.*

On the trial of an action for malicious prosecution it is reversi-
ble error for the trial judge to affirm a point as follows: "The de-
fense that his counsel advised the prosecution will not avail de-
fendant unless he told the lawyer the whole truth of the case and
unless he started the proceedings simply as a public spirited citizen
to punish a crime that had been committed, not for personal motive
of revenge." By affirming such a point too great a burden is placed
upon the prosecutor.

Proof that a criminal process had been made use of as a means
for the collection of a debt, is not conclusive in establishing the
want of probable cause and the existence of malice. It is prima
facia only, and while sufficient to shift the burden of proof to the
defendant, it may be rebutted by other proofs.

On the trial of an action for malicious prosecution where both
the defendant and his counsel testify that the suit was brought only
after the defendant had laid the whole of the facts known to him be-
fore his attorney, it is reversible error for the court to refuse to
admit various offers of testimony the effect of which would have re-
vealed to the jury the whole situation as it was presented to the de-
fendant before he made the information against the plaintiff.

Argued Dec. 1, 1915.   Appeal, No. 243, Oct. T., 1915,
by defendant, from judgment of Municipal Court Phila-
delphia Co., Dec. T., 1914, No. 463, on verdict for plain-
tiff in case of Sarah Lerner, a Minor by her next friend
and father, William Lerner, v. Leon Felderman.   Before
RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEP-
HART and TREXLER, JJ.   Reversed.

Trespass for malicious prosecution.   Before CRANE, J.

The facts are stated in the opinion of the Superior Court.

When the plaintiff was on the stand he was asked this question:

"Q.  Now, Miss Lerner, you appeared as a witness after that proceeding sometime before Magistrate Call, you appeared as a witness against Dr. Felderman in the criminal court, didn't you?

"(Objected to by Mr. Gross.   Objection sustained.)

"Mr. Oliensis: I offer to prove by the witness that before these proceedings were commenced this young lady and her parents and her uncle had started a criminal prosecution against the defendant, Dr. Felderman; they had him arrested and the case came up in court and they charged him with larceny by bailee and receiving stolen goods; that she was one of the witnesses who testified against him and she testified to certain damaging facts, and that he was acquitted despite all that by direction of the court.   That will be followed by the fact that the other three witnesses testified and there was enough testimony by her testimony, which showed that she was in the conspiracy, and as a result there was an acquittal of the defendant.

"Objected to by Mr. Gross.   Objection sustained.   (1)

"Q.  What did she testify to at your trial against which you objected?

"Objected to by Mr. Gross.   Objection sustained." (2)

Defendant was asked this question:

"Q.  Do you recall whether or not Miss Lerner testified at your trial?

"(Objected to by Mr. Gross.   Objection sustained.)

"Mr. Oliensis: I offer to prove that the witness, Sarah Lerner, appeared at the trial in room 653, at the trial of Dr. Felderman, the defendant in this case, in a proceeding there in the case of the Commonwealth against Leon Felderman, being September Session, 1914, No. 206, and

that in that case she testified against Dr. Felderman to certain facts in connection with the prosecution in that case, which facts I propose to prove are untrue and that she did that in pursuance of a conspiracy which has been testified to before by this witness on the stand.

"Objected to by Mr. Gross. Objection sustained. (3)

"Q. Doctor, what became of that case against you in room 653?

"Objected to by Mr. Gross. Objection sustained." (4)

Verdict and judgment for plaintiff for $600. Defendant appealed.

*Errors assigned* were various rulings on evidence and instructions indicated above and appearing by the opinion of the Superior Court.

*B. D. Oliensis,* for appellant.—The offer to prove that plaintiff testified against appellant on the criminal charge of larceny and that her testimony was false was improperly rejected: U. S. v. Goldberg, 7 Biss (U. S.) 175; Martin v. State, 89 Ala. 113; Com. v. McClean, 2 Pars. 367.

It was improper to charge that if defendant in commencing the prosecution was influenced by personal motives and not solely by a desire as a public-spirited citizen, to vindicate the law, the verdict must be for plaintiff: Wenger v. Phillips, 195 Pa. 214; Prough v. Entriken, 11 Pa. 81; Schmidt v. Weidman, 63 Pa. 173; MacDonald v. Schroeder, 214 Pa. 411.

The court had no jurisdiction: Osgood v. Thurston, 23 Pickering 110; Williamson v. McCormick, 126 Pa. 274; Middletown Road, 15 Pa. Superior Ct. 167; Com. v. Mosby, 163 Mass. 291; Sunanday v. McKently, 244 Pa. 533.

*Joseph Gross,* for appellee.—By entering bail and pleading to the merits, defendant has waived any irregu-

larities in the beginning of the suit, and placed himself within the jurisdiction of the court: McCullough v. Ry. Mail Assn., 225 Pa. 118; Hanks v. Lehigh Valley R. R. Co., 32 Pa. C. C. R. 565; Pain's, Etc., Co. v. Lincoln Park & Steamboat Co., 19 Pa. C. C. 23; Evans v. Brown, 19 D. R. 22; Ruhland v. Alexander, 19 Pa. C. C. R. 577; Miller v. Cockins, 239 Pa. 558.

Malicious prosecution is a "personal injury" within the meaning of the Act of 1913: McCaffrey v. Jackson, 23 Dist. Rep. 173.

OPINION BY HEAD, J., October 9, 1916:

The plaintiff seeks to recover damages for an alleged malicious prosecution begun at the instance of the defendant. The case was tried before a jury and resulted in a substantial verdict for the plaintiff on which judgment was entered. The defendant appeals. We shall consider in their natural order the more important of the questions raised by the assignments of error.

The plaintiff in her statement laid her damages at fifteen hundred dollars. It is argued the Municipal Court had no jurisdiction of the cause of action stated. The appellant claims the case at bar is embraced in and governed by the first clause of Section 10 of the Act of 1913; the appellee that the second clause must control. We quote it: "Except that in actions for damages for personal injuries it (the court) shall have jurisdiction where the sum demanded by the plaintiff does not exceed one thousand five hundred dollars." Is a suit to recover damages for a false arrest or a malicious prosecution an action "for damages for personal injuries" within the meaning of the statute? "A personal injury" legally cognizable must result from a wrongful invasion of a personal right as distinguished from a property right. That a false arrest or a malicious prosecution was an injury to the personal right—inherent in every citizen—to enjoy personal security and personal liberty was an accepted doctrine when Blackstone com-

piled his famous commentaries. "The rights of persons we may remember were distributed into absolute and relative. And the absolute rights of each individual were defined to be the right of personal security, the right of personal liberty, and the right of private property; so that the wrongs or injuries affecting them must consequently be of a corresponding nature." In other words, a wrongful invasion of a personal right must be a personal injury. An action to remedy such an injury can be nothing else than "an action for damages for a personal injury." It follows the Municipal Court had jurisdiction of the cause of action laid in the statement. The soundness of this conclusion is in no way impinged by the case of Sunanday v. McKently, 244 Pa. 533. In that case the court was construing the Act of June 24, 1895, P. L. 236, relating to the survival of certain actions and limiting the time within which they must be brought. Construing the two sections of the act together, it was held that the injuries wrongfully done to the person which the legislature intended should survive the death of the injured party were only such as "may or may not result in death." There is nothing in the language of the statute creating the Municipal Court and defining its jurisdiction to compel us to hold that by the words "actions for damages for personal injuries" the jurisdiction was to be limited to bodily injuries such as might or might not result in death.

Did that court acquire jurisdiction of the person of the defendant? Section 12 of the statute declares "All civil actions shall be begun by filing a statement of the plaintiff's claim without the issuance of any formal writ." In the case at bar the plaintiff filed her statement of claim and thus formally begun, in the Municipal Court, a suit on a cause of action of which it had full jurisdiction. The act directs how jurisdiction of the person of a defendant in such an action is to be secured. "The said clerk (of the court) shall thereupon issue a summons requiring the defendant to appear and file an answer, &c." In

this case, however, the clerk issued a capias to which the sheriff returned "C. C. et B. B."; also "Served the within named defendant by handing to him personally a true and attested copy of the within writ, &c." Without the entry of an appearance for the defendant, his counsel promptly moved to quash the writ but his motion was denied. If he was right in his contention, he was not in court and had no further interest in any proceedings that might be taken in the case. Any judgment a court should enter, under such circumstances, would be ineffective to harm a citizen who had not been brought within the jurisdiction. Any attempt to enforce such a judgment, either against his person or property, would be at once rendered abortive by an appeal to the proper appellate court.

On the denial of his motion to quash, however, the defendant filed an answer and plea and in due time the cause came on for trial. Witnesses were produced by each party, examined and cross-examined and the testimony presented to the jury by counsel, each seeking a favorable verdict. Following their finding for the plaintiff, the defendant filed and argued a motion for a new trial, thus invoking the aid of the discretionary powers of the court which he asserts had no jurisdiction either of the cause of action or of his person. In other words, the argument is that the parties to this lengthy and expensive trial were but indulging in intellectual exercise before a moot court whose judgment might be regarded by either as the now historic "scrap of paper." Such things cannot be. Hence the vigorous utterances of the Supreme Court on this subject in recent cases which this court has steadily followed. We hold therefore the Municipal Court had full jurisdiction of the cause of action and of the person of the defendant.

The action of the learned trial judge in affirming the sixth and seventh points for charge presented by the plaintiff is made the basis of two assignments. We quote the sixth point: "The defense that his counsel

advised the prosecution will not avail defendant unless he told the lawyer the whole truth of the case and unless he started the proceedings simply as a public-spirited citizen to punish a crime that had been committed, not for personal motives of revenge." By affirming this point too great a burden was placed upon the prosecutor. Points involving the same principle were presented in Wenger v. Phillips, 195 Pa. 214. They were refused by the trial court. On appeal, Mr. Justice FELL, in the course of his opinion, said: "The plaintiffs first and second points for charge were properly refused for the reason that there was no evidence to sustain them. They might well have been refused for the reason that if the facts stated therein had been sustained by proof an instruction for the plaintiff would not have been warranted. Proof that a criminal process had been made use of as a means for the collection of a debt is not conclusive in establishing the want of probable cause and the existence of malice. It is prima facie only, and while sufficient to shift the burden of proof to the defendant it may be rebutted by other proofs: Prough v. Entriken, 11 Pa. 81; Schmidt v. Weidman, 63 Pa. 173." The eighteenth and nineteenth assignments of error must be sustained.

In determining the all-important question whether or not there was probable cause for the prosecution instituted by the defendant, the jury were entitled to consider all of the facts. The whole case was a most unusual one. Four persons, including the plaintiff, were charged with having entered into a conspiracy to extort money from the defendant. He alleged this conspiracy had resulted in his own arrest charged with larceny by bailee and with having received stolen goods. He was acquitted of both charges. In the offer, the rejection of which constitutes the first assignment, the defendant sought to prove that the present plaintiff had taken no inconsiderable part in the effort to convict him under the indictment referred to, It was because of her testimony

against him that he reached the conclusion she was acting in concert with the other three defendants who were held for bail by the committing magistrate. The jury should have had before them the whole situation as it would naturally be viewed by a man of ordinary prudence and care so they could determine whether or not there was probable cause for the prosecution. The first, second and third assignments of error are, sustained. For the same reason it was important to lay before the jury the alleged fact that the prosecutor, the present defendant, had instructed his counsel at the hearing to withdraw the charge made against the present plaintiff and the reason for such action. So too, when the plaintiff, on cross-examination of the defendant's witness, brought out the apparently irrelevant fact that in an interview with the parties the witness had not given his correct name, the learned trial judge refused to permit him to give any explanation that would tend to remove any prejudice that might have been created in the minds of the jury by such a statement. It was of the utmost importance to the present defendant that the jury should see the whole situation as it was presented to him at the time he made the information against the plaintiff and others. He testified himself he laid the whole of the facts known to him before his counsel and was advised to start the prosecution. His counsel practically testifies to the same thing. If these witnesses were credible, the defendant had done all in his power to shield himself from such an action as the present one. The fourth, sixth, seventh and eighth assignments are sustained.

The judgment is reversed and a venire facias de novo awarded.